Durfee, Judge,
delivered the opinion of the court:
The controversy here involves the proper interpretation of the Warrant Officer Act of 1954 (hereafter referred to as the “Act”) 68 Stat. 157-168, 10 U.S.C. §§ 555-565. (All references hereafter will be to the Statutes-at-Large since the Code does not report the entire Act).
Plaintiff, a former warrant Officer, alleges that the Secretary of the Army erroneously interpreted the Act, and as a consequence, forced him to revert to enlisted status in order to avoid an involuntary separation from the Army. The Army Board for Correction of Military Kecords (hereafter referred to as “ABCMB”) denied plaintiff’s appeal. We find the result obtained by the Army acceptable under a proper interpretation of the law.
The Warrant Officer Act, promulgated May 29, 1954, was intended by Congress to provide a statutory career plan for warrant officers in all services similar to the plan for Begular commissioned officers. The Act gave an opportunity for advancement of qualified Begular Army warrant officers through four grades, CWO W-4; CWO W-3; CWO W-2 and CWO W-l (hereafter referred to as W-4, W-3, W-2 and W-l, respectively), whereas prior to the Act there had been only two grades. The primary need for the Act, as recognized by Congress, was one of “vitalizing the warrant officer program of all the services by establishing a system of mandatory consideration for promotion and elimination from active service in the event that the warrant officer fails twice to be selected for promotion.” Senate Beport, 83d Cong., 2d Sess., TI.S. Code Congressional and Administrative News, p. 2282 (1954).
On November 15, 1948, while serving as an officer in the Army of the United States (AUS), plaintiff was appointed *792 Warrant Officer Junior Grade in the Regular Army, with, date of rank (hereafter referred to as “D/R”) as of that date. Subsequently, under the provisions of the Career Compensation Act of 1949 (63 Stat. 802,37 U.S.C. § 232) (1952),, plaintiff’s D/R (as was the D/R of all other warrant officers) was changed to October 1,1949.
Since the purpose of the Warrant Officer Act, passed in 1954, was to redistribute all of the approximate 5,000 warrant officers into the four newly defined military grades, it necessarily affected plaintiff. Nevertheless, plaintiff was one of 535 warrant officers who were not redistributed upward by the redistribution board, but instead, retained their permanent grade of W-l. Plaintiff was notified of this decision by letter dated November 26,1954.
Plaintiff and 119 other W-ls were then immediately considered for promotion to W-2 by a selection board which was also authorized by the Act. Sixty-six of them, including plaintiff, were promoted to W-2 on February 24, 1955 with D/R as of that date.
Thereafter, one of the 66 asked for a change in his D/R in order that it reflect his entire record of service duty prior to his promotion to W-2. This would enable him to be considered earlier for a promotion to W-3. The Secretary of the Army granted the request and backdated his D/R. In fact, the Army changed the D/R of all 66 officers, including plaintiff’s, from February 24, 1955 back to October 1, 1952. (This retrodating of plaintiff’s D/R is the exact focus of plaintiff’s attack, and the reasons therefor will be discussed shortly.)
By reason of this change in the D/R, plaintiff and the other 65 officers were considered for promotion to W-3 on October 1, 1958 (i.e., six years after the revised D/R, but only 3% years after the original D/R). Some were selected and promoted, plaintiff and others were not. In 1959 plaintiff was again considered for promotion and again not selected. As plaintiff would have faced release from active duty because of this second pass-over (by virtue of sec. 13 of the Act, 68 Stat. 162), he resigned his warrant to enlist in the Regular Army in order to complete the necessary time for longevity retirement. He was retired by reason of physical disability on July 8,1964.
*793 The sole issue here is whether the Secretary of the Army had the statutory authority to set plaintiff’s D/B. for his promotion to W-2 when he did, nm., 2% years earlier than the actual date of promotion to W-2. Plaintiff claims that he was denied the full six-year “sanctuary” for W-2s, which the statute explicitly affords, and consequently had not obtained sufficient experience to be able to earn the promotion to W-3. We hold that the Secretary did have such authority.
To reiterate a point we mentioned earlier, under the provisions of the Career Compensation Act of 1949, supra, all warrant officers then on duty, irrespective of their prior service, were given a D/B of October 1, 1949 (the effective date of the Act). Based on this statutorily assigned D/B, plaintiff had accrued approximately five years of prior service by December 15, 1954, at which time the first selection board under the new statutory procedure was convening for the purpose of considering promotions. As it is agreed that plaintiff’s service credit was, at the very least, as great as the three years a warrant officer is allowed to remain in rank W-l, it became mandatory by virtue of sec. 9 (a) of the Act, supra, for his promotion to be considered by the convening board. His promotion to W-2 was approved by this board with a D/B of February 24, 1955. As of that date, plaintiff had approximately 5% years of service duty as a warrant officer. Both plaintiff and defendant agree that the Army Selection Board was correct in considering at least three years out of a possible 5% years of service duty as a credit for purposes of promotion. This point is not in dispute. The question that remains, however, is whether the remaining 21/3 years of prior service duty was also used up at this time* or whether it can be carried over for purposes of future *794 promotion eligibility. The Army Secretary ultimately decided it could be carried over, and consequently gave plaintiff a service credit for the remaining 2% years of duty. The procedural device used to accomplish this carry-over of service credit was the back-dating of plaintiff’s D/E on his promotion to W-2 from February, 1955 (original D/E) to October, 1952 (revised D/E).
Plaintiff argues that the prior duty served its sole purpose by bringing him before the selection board which convened in December, 1954. Once it had served that function it disappeared regardless of the fact that it had not been fully utilized. Defendant, on the other hand, argues that the entire prior service duty had to be fully utilized. Both parties cite sections 9 and 11 of the Act to support their positions.
We disagree with plaintiff to the extent he argues that a carry-over is totally impermissible. We disagree with defendant to the extent it insists that the carry-over was mandatory. We think the carry-over was within the discretion of the Secretary of the Army. It was only after the discretion was exercised that the back-dating became mandatory.
The heart of the matter, then, is whether the Act grants the Secretary authority to allow a sendee credit for prior duty to carry over from one rank to hasten promotional consideration to the next, higher rank. In other words, can a service credit be used to shorten the time requirements for promotional consideration as prescribed by sec. 9(a) of the Act? We think that the sections of the Act, read together, do grant the Secretary such authority.
Sec. 9(a), 68 Stat. 160, explicitly states that service credit can be used to compute the required time in rank. The parenthetical within the provision which refers to such inclusion of service credits was apparently overlooked by plaintiff since the parenthetical was not included in the Code version of the Act. Sec. 9(a) states :
Each permanent warrant officer of the regular service shall be considered by a selection board as prescribed by the Secretary sufficiently in advance of the date on which he completes the service in permanent warrant officer grade in the regular service prescribed in this section (ineluding service or edited in that permanent *795 warrant officer grade in the regular service wnder section Jf{b) orS(b) of this Act * * *) so that he may, subject to the provisions of this Act, be promoted to the next higher permanent warrant officer grade in the regular service as of the day after the date on which he completes the following service in grade—
(1) warrant officer, W-l, three years;
(2) chief warrant officer, W-2, six years; * * * [Emphasis supplied]
This section clearly tells us that an officer must have completed three years in grade W-l, six years in W-2, and also tells that this service may include service credited by the Secretary under sec. 5 (b) of the Act.
Given that service credits can be used to meet the time requirements prescribed by sec. 9(a), we must then turn, as directed by that provision, to sec. 5(b) of the Act which states (68 Stat. 159) :*
Except as otherwise provided in this Act, warrant officers appointed in the regular service under this section shall be credited with such service for promotion purposes as the Secretary may prescribe * * *. [Emphasis supplied]
This section makes clear that the Secretary has a limited discretion on appointments by promotion to grant service credits for prior service duty. To summarize and synthesize what these two sections mean as applied to the present case, we shall turn to the D/E established by the selection board. The original promotion order, dated February 24, 1955, implicitly states that the Secretary did not give any credit for the 2½ years of prior duty remaining after three years’ service credit had been used up in order to reach the selection board. But the revised promotion order, changing plaintiff’s D/E as W-2 to October 1, 1952, implicitly states that the Secretary had changed his mind and decided to exercise his discretionary power and grant plaintiff 2% years’ service credit for his prior duty, which means that *796 plaintiff’s full 51/3 years of prior duty were eventually entirely converted into service credits for promotional purposes. Once the prior service duty lias been converted into service credits, these credits can then be used to meet the eligibility requirements of sec. 9(a).
The conclusion that service credits may be used in some situations to shorten the waiting- period for promotion to the next higher grade is reinforced by sec. 11(a) of the Act. This section provides that when a permanent warrant officer has been selected for appointment to the next higher grade by action of a selection board, “the date of his appointment [D/E.] thereto shall be the day after the date he completes the service prescribed in sec. 9 (a) of this Act.” Since, as we have already pointed out, sec. 9(a) does provide service credit, and since sec. 11(a) focuses on 9(a) to determine the correct D/E, it must likewise incorporate the probability that service credits will be used to carry over under some circumstances. Another aspect of sec. 11(a) also supports our interpretation as the correct determination of Congressional intent. If plaintiff’s interpretation that no carry-over is permissible is correct, the obvious procedure would be to make the official date of appointment [D/E] the same as the actual date of appointment. The fact that a more complex formula was used argues, by negative implication, that Congress did foresee the possibility of carry-over in some situations.
There is also evidence that the Secretary would have discretion to grant service credits, which would carry over, in the form of testimony before the House Committee on Armed Services, 83d Cong., Vol. 3, p. 3654:
CWO Hendry: Now, the bill limits us. The last years of service, that we can credit the man with is 5 years probably by the time this bill is enacted.
Mr. Blandford, Counsel to Committee: The least that can happen to a man with 5 years of prior service would be W-l with a 2-year leg on W-2.
CWO Hendry: He will be considered for W-2.
Mr. Blandford: Y es, he would be put in W-2.
CWO Hendry: Probably went up to W-2.
Mr. Blandford: Yes, a W-2, excuse me. He would be put in W-2 with a 2-year leg toward W-3.
*797 CWO Hendry: Not necessarily. He may be put in W-2 with no years of service in that grade.
The obvious thrust of this testimony is that the Secretary would have discretion to grant a service credit to the extent that there would be a carry-over or “leg toward” the next higher promotional step.
In this case, the Secretary decided to grant plaintiff a carryover of service credit. We think the Act allows the exercise of such judgment, and there is no substantial evidence that the exercise of discretion was arbitrary or capricious.
In view of the foregoing opinion, the court concludes as a matter of law that plaintiff is not entitled to recover, and therefore, his petition is dismissed.
ColliNS, Judge, took no part in the decision of this case.
FINDINGS OF FACT*
The court, having considered the evidence, the report of Trial Commissioner C. Murray Bernhardt, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiff is a citizen of the United States and a resident of the State of New Jersey.
2. The plaintiff served in the Army in an enlisted status from June 10, 1942 to March 30, 1943, at which time he was discharged in order to accept a commission in the Army of the United States (AUS) and so served from March 31, 1943 to March 31, 1950, when he was relieved in order to reenter on active duty as a warrant officer, serving from April 1, 1950 to November 21, 1959. He then resigned in order to reenlist in the Army, and reenlisted on February 19, 1960, in the grade of sergeant. He was promoted to the grade of staff sergeant on September 19, 1962. Plaintiff retired as a first lieutenant on July 8, 1964, by reason of physical disability.
3. On November 15, 1948, while a first lieutenant, AUS, the plaintiff was selected for and appointed as Warrant *798 Officer Junior Grade (WOJG), Regular Army (subject to termination of bis commission), with a date of rank, hereinafter referred to as D/E, November 15, 1948. On August 30, 1950, his D/E as a WOJG, Pay Grade W-1, was adjusted to October 1, 1949, under Section 201 of the Career Compensation Act (63 Stat. 802, 37 U.S.C. §232). On December 10, 1952, plaintiff was appointed Chief Warrant Officer (CWO), AUS, Pay Grade W-2 (Temp).

The Career Compensation Act

4. Under the provisions of the Career Compensation Act of 1949 all warrant officers then on duty, irrespective of their prior service, were given D/E of October 1, 1949, the effective date of the Act.

Purpose of Warrant Officer Act

5. In 1954 it was considered advisable to adopt legislation to make provision for an adequate warrant officer career which ultimately resulted in the Warrant Officer Act of 1954 (May 29,1954,68 Stat. 157).
The Act is designed to provide an opportunity for advancement of qualified Eegular Army warrant officers through the four grades into retirement and to provide an approximately equal opportunity for such advancement without an undue stagnation in grade W-4.

Statutory Grades Cnder Career Compensation Act

6. Prior to the Act there were only two statutory grades— chief warrant officer (CWO) and warrant officer junior grade (WOJG). However, with the Act, allocations were made for pay purposes and thus, provision was made for CWO, pay grade W-4; CWO, pay grade W-3; CWO, pay grade W-2; and WO, pay grade W-1. At that time there were very few in the permanent statutory grade of CWO, the reason being that it was necessary to serve in the grade of WOJG for ten years.

Provisions of Warra/nt Officer Act

7. The Act was designed to provide for statutory grades CWO W-4, CWO W-3, CWO W-2, and WO W-l, thereby *799 establishing separate statutory grades equivalent to the existing pay grades. Further, the Act provided for a “distribution” and, if necessary, a “redistribution” of the then present warrant officers into the grades thus established for promotion purposes.
8. The Act further provided that the officers would not lose any rights that they had at the time of the enactment. Thus, the Act established a permanent promotional system and provided for an alignment of all Regular Army warrant officers for future promotion purposes.

Distribution Under "Warrant Officer Act

9. Initially, all warrant officers were “distributed” to the permanent grades established by the Act without change in their permanent pay grades. Thus, permanent OWOs of pay grades W-4, W-3, and W-2 were “distributed” to CWO W-4, CWO W-3, and CWO W-2, respectively, and WOJG in pay grade W-l were “distributed” to WO W-l (Dept, of Army Cir. 80, para. 4(a), dated July 16,1954).

Tentative Redistribution

10. All warrant officers (4933) were “redistributed” tentatively by the Department of the Army (Cir. 80, para. 4(e)) to the grades CWO W-4, CWO W-3, and CWO W-2 based upon seniority and commissioned service as follows:
Nos. 1-528 — W-4 (528)
Nos. 529-1402 — W-3 (874)
Nos. 1403-4933 — W-2 (3531)
Credit for commissioned service was allowed as is provided in paragraph 4(c) of Circular 80.

Final Redistribution

11. Thereafter, boards of officers at the Department of the Army level, pursuant to Circular 80, para. 4(e), were called upon to determine whether those so tentatively “redistributed” were qualified to hold that grade, starting with CWO W-4. Those in CWO W-4 not so qualified were dropped to head the next grade, CWO W-3. Thus, some of the 528 did not remain in CWO W-4 on “redistribution”. *800 The boards then dipped into the tentative "redistribution" CWO W-3 list to pick up a sufficient number to meet the OWO W-4 quota of 528. The board then considered the resultant CWO W-2 list and, by the same process, selected a sufficient number to meet the OWO W-3 "redistribution" quota of 874. The same practice was followed for the OWO W-2s. Those remaining (a total of 535) were thus left by the "redistribution" in their permanent grade of WO W-1.
Promotion LiBt
12. To establish a sequence on the promotion list within the grades of W-4, W-3, and W-2, Department of the Army Special Order, SO-243, dated December 1, 1954, established, for the officers listed thereon, a D/R of November 1, 1954, and credited those officers with varying years of service for promotion purposes. The credit given was based upon a quota system with allowances being made for from six years to 0 years within the grade based on seniority, with extra credit for service as a commissioned or warrant officer. As this included considerations of seniority and commissioned service, it did not necessarily reflect the number of years actually served as a warrant officer. Those officers left in grade WO W-1 were given their previous D/R and seniority as required in the Act.
13. "Bedistribution" in its final form, as published in SO-243, was as follows:
W-4 520
W-3
862-5 years-133
4 years-140
3 years-143
2 years-148
1 year-141
0 years-157
W-2 3016-6 years- 1
5 years-459
4 years-478
1437
3 years-499
2 years-518
1 year-531 1579
0 years-530
Balance 535
(Including Plaintiff)
Total 4933

*801
Criteria for Redistribution

14. The criteria used by the Redistribution Boards pointed toward the “redistribution” as provided in the 1954 law and was not necessarily the same criteria as used previously or used thereafter by Promotion Boards.

Promotions After the Act

15. After implementation of the 1954 Act, all warrant officers were considered for promotion as is provided in the Act. Thus, a warrant officer listed in Special Order 243, supra, as CWO W-2 with six years of service for promotion purposes was considered for promotion to OWO W-3 (permanent) by a Selection Board which convened December 15, 1954, and correspondingly one listed with three years’ service for promotion purposes was considered by a Permanent Promotion Board in 1957 and one with 0 years’ service was not considered until 1960. Plaintiff and the other WOW-1s, i.e., the 535 not redistributed to grades W-2, 3 or 4, were considered for promotion to CWO W-2 (permanent) by reason of three or more years of service by a Selection Board which convened on December 15, 1954, as was required by the Act, 10 U.S.C. § 559.

Notice to Plaintiff of Nonredistribution

16. By letter dated November 26, 1954, plaintiff was advised by the Adjutant General’s Office:
1. Under the provisions of Section 4a, Warrant Officer Act of 1954 (Sec VI, DA Bui 4, 1954) you were recently considered and not recommended by a board of officers for redistribution to the permanent grade of CWO, W-2, Regular Army. [Emphasis supplied.]
2. On 15 December 1950 (sic) ,* you will be credited with over 3 years service in the permanent grade of WO, W-l, Regular Army, and your consideration for promotion to the permanent grade of CWO, W-2 Regular Army, under the provisions of Section 9a, of the Warrant Officer Act of 1954 will be mandatory.
*802 As a result of the action referred to in this letter, plaintiff was “distributed” to (i.e., remained in) the permanent grade of W-l.

Extracts from the Aet

17. The action taken by the Army with respect to the plaintiff’s consideration for distribution and “redistribution” was accomplished under the following pertinent provisions of the Act, summarized as follows:
(a) Section 3(a) established four (4) warrant officer military grades: Warrant Officer, W-l; Chief Warrant Officer, W-2; Chief Warrant Officer, W-3; and Chief Warrant Officer, W-4.
(b) Section 4(a) provided that Regular Army warrant officers would be distributed on November 1, 1954 among the four warrant officer grades as the Secretary of the service might prescribe and could, within 2 months thereafter, be “redistributed”. It also provided that the distribution and redistribution action would not result in the assigning of permanent and temporary grades lower than those held on October 31, 1954.
(c) Section 4(h) provided that Regular Army warrant officers would, for promotion purposes, be credited in the permanent warrant officer grade in which distributed or redistributed with such service as the Secretary of the service prescribed, but not less than the active service performed as a permanent warrant officer after September 30,1949, in the permanent grade corresponding to the permanent warrant officer grade in which distributed or redistributed including active service in any higher pay grade as a warrant officer or in any commissioned grade.
(d) Section 5(h) provided that except as otherwise provided in this Act, warrant officers appointed in the regular service under this section shall be credited with such service for promotion purposes as the Secretary may prescribe * * *.
(e) Section 9(a) provided that each permanent warrant officer of the regular service shall be considered by a selection board as prescribed by the Secretary sufficiently in advance of the date on which he completes the service in permanent warrant officer grade in the regular service prescribed in this section (including service credited in that permanent warrant officer grade in the regular service under section 4(b) or 5(b) of this Act) so that he may subject to the provisions of this Act be promoted to the next higher permanent warrant officer *803 grade in the regular service as of the day after the date on which he completes the following service in grade—
(11 warrant officer, W-l, three years;
(2) chief warrant officer, W-2, sis years.

Oomment on Legislative History

18. The effective date of the Act was November 1, 1954. The legislative history[1] of the Act shows that it was the intent of Congress that there be no reduction in the permanent grade of any warrant officer. Similarly, it was the intent, in establishing the redistribution system, that the Secretaries could thereafter, or “concurrently with distribution, redistribute warrant officers to a higher grade among the four new grades” (U.S. Code Congressional and Administrative News, 1954, Volume 2, 83rd Congress, 2nd Session, p. 2284). It was also the purpose and intent of the Act to provide for the orderly progression through the four warrant officer grades. The term “redistribution” referred to the “readjustment of a warrant officers grade among the newly established ones, as the Secretary may prescribe” (p. 2286). It was by this authority that plaintiff was considered by the “redistribution board” and found to be not qualified for “redistribution”, to the permanent grade of CWO W-2, Regular Army.

Status Immediately After the 195J¡. Act

19. Redistribution was accomplished for CWO W-4 to CWO W-2 with the publication of SO-243 on December 11, 1954. This order provided for 520 CWO W-4, 862 CWO W-3, and 3016 CWO W-2. The promotional status of the remainder of 535[2] warrant officers, W-l, was determined by their existing permanent grade and service.
20. Thus, on December 11,1954, there were two groups of warrant officers for promotion purposes:
(a) Those redistributed in grades CWO W-2, 3 and 4, *804 pursuant to SO-243, whose promotional status was exactly as indicated in the order.
(b) Warrant officers who retained their permanent grade, i.e., WO W-l; their promotional status was in accordance with the provisions of the Act which saved to them their former grade and years of service.
(c) Both groups thereafter were to be promoted in the manner prescribed in the Act.
(d) Those warrant officers who were “redistributed” to the grade of OWO W-2 by virtue of the action of the “redistribution boards” were given a D/B. of November 1, 1954, and promotion service credit shown on the order (SO-243).

Plaintiffs Promotion to GWO W-2

21. Approximately 120 officers (including plaintiff) who were not selected for redistribution to CWO W-2 were considered for promotion to CWO W-2 (permanent) in December 1954. On February 24, 1955, announcement was made (para. 14, SO-38) of the promotion of 66 of them (including plaintiff) to the grade of CWO W-2, permanent, with a D/B from February 24,1955. This promotion to the grade of CWO W-2 was the result of the plaintiff and the other WO W-ls not “redistributed” to W-2, 3 or 4 having been considered for such promotion by a Selection Board which convened December 15, 1954, less than six weeks after their failure of selection by the “redistribution boards”. The “redistribution boards” and this Selection Board had for consideration the same personnel records of the plaintiff. Of the 120 considered for promotion by the December 1954 Selection Board, not all were selected, but some were later selected. The D/B of February 24, 1955, assigned to plaintiff, was a date approximately four months subsequent to the D/B of those of his contemporaries who were redistributed CWO W-2 and credited with 0 years' service by the “redistribution board”.

Change of Plaintiffs Date of Bank

22. By letter dated November 5, 1957, from the Adjutant General’s Office, plaintiff was advised that paragraph 14, *805 SO-38, was amended, changing his D/R as CWO W-2, from February 24, 1955 to October 1, 1952. This action resulted from an administrative interpretation of May 23,1957 (after one of the officers concerned had applied administratively for such a change in his D/R) that under the provisions of Sections 9(a) and 11(a) of the Act, the correct “date of appointment” for promotion purposes of plaintiff as CWO W-2, Regular Army, was October 1, 1952 (the day after he completed three years’ service as WO W-l, Regular Army), rather than February 24, 1955, the date designated in his promotion order.[3] Under the authority of administrative action taken in changing plaintiff’s D/R, the Army also changed the D/R of approximately 65 other warrant officers but did not change the D/R of all 125 officers who had been promoted to CWO W-2 in 1955.

Plaintiffs Consideration for CWO W-3

23. On August 18,1958, plaintiff, and 65 other warrant officers whose D/R were changed as stated in paragraph 22, were considered by a Selection Board for promotion to the grade of CWO W-3. Officers redistributed to CWO W-2 with three years’ service for promotion purposes, and those with four years of such service who had one pass-over, were also considered for promotion to CWO W-3 at the same time as plaintiff. Plaintiff was not selected. Thereafter, in October 1959, he was considered by a second Board and was not selected for promotion. Plaintiff’s consideration for promotion to the grade of CWO W-3 in 1958 and 1959 resulted from the “amendment” of his D/R as a CWO W-2 from February 24, 1955 to October 1, 1952. If his D/R had not been “amended”, he would not have been considered until 1961 and, if not then selected, again at the next Board. The “amendment” of his D/R also caused him to be placed in the zone of consideration ahead of approximately 50 percent of those warrant officers who had been “redistributed” to the grade of CWO W-2 and given a D/R of November 1, 1954.
*806 24. The plaintiff knew at the time that his D/E. was “amended” that he would be considered at an earlier date than approximately 50 percent of those “redistributed” to CWO W-2 and given a D/E of November 1,1954.
25. Certain warrant officers who, like plaintiff, were not “redistributed” to CWO W-2 in November 1954 were, like plaintiff, considered by the December 1954 Selection Board (which promoted plaintiff to CWO W-2) and not selected, but on being considered by a second Army Selection Board in 1955, were promoted to CWO W-2 and given a D/E later than plaintiff’s, as required by Section 11 (b) of the Act.

Plaintiff’s Tender of Resignation

26. On November 21, 1959, because of plaintiff’s second nonselection for promotion to CWO W-S, he tendered a resignation of his warrant in the face of his imminent involuntary separation, in order to reenlist in the Army to protect his longevity retirement rights.

Correction Board Action

27. On November 16, 1959, plaintiff applied to the Army Board for Correction of Military Eecords wherein he requested revocation of the amendment of paragraph 14, SO-38, restoration or assignment of his D/E from February 24, 1955, or November 1, 1955, whichever was deemed appropriate; elimination of those records evidencing his failure of selection for promotion and revocation of the departmental message directing his separation on November 22, 1959. Plaintiff submitted documentation to support his request for relief. He did not request a hearing.
28. (a) On November 25, 1959, the Army Board for the Correction of Military Eecords determined that insufficient evidence had been presented to indicate probable material error or injustice, and the application was denied.
(b) On December 9,1959, the Adjutant General informed the plaintiff that his application had been considered by the Board on November 25, 1959, and had been denied. No details were set forth in this letter as to the Board’s findings, conclusions, and recommendations.
*807 29. On March 23, 1961, plaintiff sought reconsideration of his application and filed an extensive brief. On April 25, 1961, without granting plaintiff a formal hearing as requested, he was advised by the Army that in its initial review, the Board considered the issue of adjustment of his D/R, and the interrelated issues of earlier promotions to CWO W-2 based on his changed D/R and plaintiff’s failure of selection for promotion to CWO W-3, which had been previously considered; that the Board determined that the Department’s interpretation of the Act was proper as applied to the facts and circumstances of the case and, accordingly, had denied the previous application; that review of the then present request for reconsideration did not present new material evidence not previously considered; that the case could not be reopened for a hearing on the merits, and that the request was, therefore, not favorably considered.
CONCLUSION OK LAW
Upon the foregoing findings of fact, which are made a a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover, and his petition is dismissed.

The suggestion of plaintiff that the prior service duty was used up at an even earlier point in time, i.e., when plaintiff came before the redistribution board, cannot be accepted. If this were so, plaintiff would not be allowed to come before the selection board until three years after his distribution into W — 1 by the redistribution board. But since plaintiff does, in fact, concede that he appeared legitimately before the selection board only a few months after final redistribution, he must also accept the Secretary’s authority to recognize the full 5% years of prior duty. Once it is granted that three years of prior service rightfully carried over beyond the redistribution procedure, no valid distinction can or has been offered why the full 5% years cannot be carried over to be at least considered by the first selection board for promotional purposes.

Note that when see. 5(b) was recodified by the Act of August 10, 1956, c.1041, 70A Stat. 20, 10 U.S.C. § 556, it was restricted to persons “originally appointed.” Since the recodification was passed subsequent to the plaintiff’s promotional appointment, it cannot govern the construction of the section before us.

Although, we do not accept the Commissioner’s recommended conclusion of law, we do accept his findings of fact with slight modifications.

Obviously meaning 15 December 1954.

 Extensive hearings were conducted in the House and Senate. House: March 3-17, 1954 — Committee on Armed Services, 83rd Congress, pp. 3621-3794. Senate: May 29, 195'4, pp. 1-36. Senate Report #1284, 83rd Congress, 2nd Session, U.S. Code Congressional and Administrative News, pp. 2281-2299.

 This includes those dropped for any reason and the remainder would be those not redistributed.

 In the subsequent Correction Board proceeding plaintiff's request for the Army opinion giving the reasons for this action was refused.