**Lynda FINKELSTEIN, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 90–4025C.

United States Court of Federal Claims.

Sept. 1, 1993.

As Corrected Sept. 14, 1993.

John D. Hickman, San Francisco, CA, for plaintiff.

Kathryn A. Bleecker, U.S. Dept. of Justice, Civil Div., Washington, DC, for U.S.

### *Opinion*

WEINSTEIN, Judge.

Defendant has filed a motion for summary judgment on the grounds that plaintiff has insufficient evidence to establish that the Army Board for Correction of Military Records (ABCMR or Board) decision regarding plaintiff's involuntary separation from the United States Army was arbitrary, capricious, or contrary to the evidence, statutes or regulations. Plaintiff's complaint asks that she be reinstated to active duty and awarded back pay from January 1, 1985, the date of her discharge, and that her records be corrected by removing two passovers for promotion from her record.

The court concludes, for the reasons stated below, that the ABCMR's decision was erroneous as a matter of law because: (1) the first board deciding against recommending her promotion was convened before she had served a full year of continuous active duty and less than one year since her most recent placement on the active duty list, as required by Army Regulations (AR) 624–100, para. 2–3f (10 July 1984); and (2) both boards where convened before she had completed three years of

service in that grade, as required by 10 U.S.C. § 619(a)(2) (1982). Therefore, contrary to the ABCMR's determination, plaintiff's discharge for failing twice to be selected for promotion was improper. The court therefore grants plaintiff's cross-motion for partial summary judgment with respect to her entitlement to removal of the two passovers from her record, reinstatement, and back pay, and remands for the Army's determination within six months of the grade of the position to which she shall be reinstated and the amount of the back pay to which she is entitled.

### *Facts*

The following facts are not in dispute. Plaintiff was appointed as a Reserve commissioned officer in the Army in the grade of 2nd lieutenant, on August 13, 1973. On August 19, 1975, she was promoted to the grade of 1st lieutenant in the regular Army. She was twice passed over for promotion to the grade of captain and, thus, as of August 27, 1976, was involuntarily released from active duty, with an honorable discharge, and reassigned to the Reserves.

Plaintiff petitioned the ABCMR for relief on the grounds that two 1975 officer evaluation or efficiency reports (OERs) should not have been considered by the two selection boards. The ABCMR determined that plaintiff's release was an "injustice" warranting correction of records and restoration to active duty, based on "the unusual circumstances surrounding this matter" (presumably the evidence before the Board indicating that she had received the negative OERs from a superior as a result of her "blowing the whistle" on certain alleged financial improprieties).

On April 30, 1982, the ABCMR recommended[1] that her records should be corrected in such a manner as to place her in an active duty status without a break in service and loss of pay and allowances. The Deputy Assistant Secretary of the

---

1. The government, after representing in court that the promotion to the rank of captain was approved by a statutory Special Selection Board (SSB) or an entity identical to an SSB, informed the court that the promotion was approved instead by a secretarially appointed Standby Advisory Board (STAB).

Army approved the ABCMR recommendation and ordered that plaintiff's records be corrected to show that she had a "date of rank," in the grade of captain, of August 19, 1977. By corrected order of June 9, 1982, effective September 10, 1982, she was "ordered to active duty" in the grade of captain with a reporting date of September 10, 1982. By order of September 29, 1982, she was "ordered to active duty" with a "reporting date" of October 15, 1982 and an "effective date" of October 13, 1982.

On June 22, 1982, the Deputy Secretary of the Army approved the removal and destruction of her two 1975 OERs and ordered that "an adequate explanation be placed in her selection folder, relative [to] the gap in her officer evaluation reports from the date of her last report to the date of her return to active duty status, to show that this gap was not [due to] any fault on her part and to insure that she would not be prejudiced thereby in the consideration of any future personnel actions." At her request, plaintiff was assigned to active duty at the Presidio, San Francisco on October 15, 1982.

Because her records were ordered to be corrected to show a date of rank of August 19, 1977, her date of rank placed her within the promotion zone for the grade of major. Thus, she was placed in the same zone as officers who had served in the grade of captain for 5¾ to 6¼ years (or whose dates of rank were between October 12, 1976 and September 30, 1977).

Therefore, after only five months of actual service at the grade of captain in March, 1983, she was notified that she had been included on the list of those eligible for promotion to the grade of major and would be considered by the selection promotion board to be convened on May 10, 1983.

The May 10, 1983 selection board, based on a record of less than seven months of actual service at the grade of captain, failed to select plaintiff for promotion. A second selection board, convened on April 17, 1984, again reviewed plaintiff for promotion to the grade of major and again passed her over. Thus, in accordance with 10 U.S.C. § 632 (1982),[2] plaintiff was involuntarily discharged from active duty, as of January 1, 1985. As required by regulation, no reasons were provided by either board for failing to select Ms. Finkelstein. Army Regulation (AR) 624–100, para. 2–8a(2). She was reassigned in the Reserve on April 18, 1985, effective January 12, 1985.

On December 22, 1987, plaintiff filed an application with the ABCMR requesting reinstatement to active duty, retroactive to January 2, 1985, and nullification of her non-selection to the grade of major. The principal grounds for these requests were: (1) that, due to discrimination by her superiors and inadequate time in active duty, she had not been provided sufficient opportunity to obtain a command assignment or otherwise to gain experience adequate to compete with other members of her grade; and (2) that the selection boards improperly had considered matter ordered to be stricken from her record by the Deputy Assistant Secretary of the Army, such as the voided OERs and material indicating that she had a gap in service due to her discharge. She provided affidavits executed by herself and others indicating that she had been discriminated against by her superiors at the Presidio.[3] She claimed the discrimination was based on her sex and negative information that allegedly remained in her official records notwithstanding the 1982 expungement order.

On September 19, 1990, by Memorandum of Consideration, the Board denied her ap-

---

**2.** Section 632 of title 10, Effect of Failure of Selection for Promotion, was enacted into law in 1980. *See* Defense Officer Personnel Management Act, Pub.L. No. 96–513, § 105, 94 Stat. 2835 (1980). That section requires the involuntary discharge of an officer at the regular grade of captain who "has failed of selection for promotion to the next higher regular grade [of major] for the second time." 10 U.S.C. § 632(a).

**3.** Plaintiff's allegations of sexual bias and other improprieties by her Presidio supervisors were not rebutted by the government at the ABCMR or in this proceeding.

plication without a hearing, based on the following conclusions: (1) Ms. Finkelstein "met all the requirements for promotion consideration to major;" (2) the lack of a command assignment was not a "prerequisite" for promotion; and (3) the selection boards did not "have access" to her restricted personnel fiche (R-fiche) (containing prejudicial material regarding the 1975 OERs and the earlier ABCMR proceeding) and only reviewed her performance fiche (P-fiche), Officer Record Brief (ORB), and the correspondence she provided to the boards.

The ABCMR's conclusions were based on an advisory opinion rendered by the Total Army Personnel Command (PERSCOM), which concluded that she met the active duty service requirements of 10 U.S.C. § 619 and chapter two of AR 624–100, and noted that plaintiff's correspondence with the boards included copies of the voided OERs.[4]

The ABCMR did not directly address the issue of whether her superiors' evaluations and assignments might have been prejudiced by material that should have been expunged, or whether their failure to give her a command position was improper or discriminatory, presumably because it concluded that there was no nexus between such failure or prejudice and her nonselections.

Plaintiff filed her complaint in this court on December 17, 1990.

### *Jurisdiction, Standard of Review*

As an officer on active duty, plaintiff was entitled by 37 U.S.C. § 204(a)(1) (1988) to the basic pay and allowances of the pay grade to which she was assigned. Thus, her claim for back pay and allowances of her position is a claim based on an Act of Congress mandating the payment of money over which this court has jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1) (1988). *See Bell v. United States*, 366 U.S. 393, 81 S.Ct.

1230, 6 L.Ed.2d 365 (1961); *United States v. Wickersham*, 201 U.S. 390, 398–99, 26 S.Ct. 469, 472, 50 L.Ed. 798 (1906); *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007, 178 Ct.Cl. 599 (1967) (serviceman's rights are statutory, not contractual). Reinstatement and correction of records are remedies that may be awarded by this court incident to the award of back pay, under 28 U.S.C. § 1491(a)(2).

This court has the authority to review decisions of military correction boards regarding service members' entitlement to back pay or other monetary relief associated with improper discharge. *See, e.g., Sanders v. United States*, 594 F.2d 804, 219 Ct.Cl. 285 (1979). The court's scope of review is limited, however, requiring deference to the board unless the plaintiff shows, by cogent and clearly convincing evidence, that the board decision was arbitrary or capricious, contrary to law or regulation, or unsupported by substantial evidence. *E.g., Chappell v. Wallace*, 462 U.S. 296, 303, 103 S.Ct. 2362, 2367, 76 L.Ed.2d 586 (1983); *accord Arens v. United States*, 969 F.2d 1034, 1037 (Fed.Cir. 1992) (citing *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed.Cir.), *cert. denied*, 479 U.S. 853, 107 S.Ct. 188, 93 L.Ed.2d 121 (1986)).

Additionally, there is a strong presumption that military correction boards "faithfully discharge[ ] their duties," *see Grieg v. United States*, 640 F.2d 1261, 1268, 226 Ct.Cl. 258 (1981), *cert. denied*, 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982), and that all military officials "discharge their duties correctly, lawfully, and in good faith." *See Sanders*, 594 F.2d at 813.

Although the courts presume that military boards interpret their regulations correctly, *see Wronke*, 787 F.2d at 1576, a reading that is clearly erroneous or inconsistent with the statute and regulations is not entitled to judicial deference. *See Clayton v. United States*, 225 Ct.Cl. 593,

---

**4.** The fact that plaintiff may not specifically have relied on 10 U.S.C. § 619 or AR 624–100 in her petition to the ABCMR does not preclude the court's consideration of these provisions

since the ABCMR, by incorporating the PERSCOM opinion, specifically based its decision on its application of those authorities (or purported to do so).

595, 1980 WL 13179 (1980) (citing *Sanders,* 594 F.2d at 813; *Skinner v. United States,* 594 F.2d 824, 219 Ct.Cl. 322 (1979) (no deference required if board action was "arbitrary, capricious or in bad faith, or unsupported by substantial evidence or contrary to law, regulation, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced")).

 Even if the discharge is committed by statute to the military department's full discretion, it nonetheless is reviewable for failure to comply with lawful statutory or regulatory requirements governing and limiting the agency's discretion over the mode or basis for such discharge. A government agency is legally bound to adhere both to the governing statute and to its own regulations, even though it might not have been required to issue them at all. *E.g., Sargisson v. United States,* 913 F.2d 918, 921 (Fed.Cir.1990) (citing *Vitarelli v. Seaton,* 359 U.S. 535, 539, 79 S.Ct. 968, 972, 3 L.Ed.2d 1012 (1959); *Service v. Dulles* 354 U.S. 363, 377, 77 S.Ct. 1152, 1160, 1 L.Ed.2d 1403 (1957); *Voge v. United States,* 844 F.2d 776, 779 (Fed.Cir.), *cert. denied,* 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988)).

 Plaintiff is entitled to appropriate judicial review of the specified grounds for her release, in this case the two passovers by these selection boards. She also is entitled to review of the selection boards' compliance with the standards governing their conduct and practice. *Cf. Bockoven v. Marsh,* 727 F.2d 1558, 1562 (Fed.Cir.), *cert. denied,* 469 U.S. 880, 105 S.Ct. 245, 83 L.Ed.2d 183 (1984); *Doyle v. United States,* 599 F.2d 984, 996, 220 Ct.Cl. 285 (1979) (defect in constitution of selection board not harmless error), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980); *Sargisson,* 913 F.2d at 921, 922.

*Issues*

 The principal issue addressed in this opinion[5] is whether plaintiff's "constructive service" meets the time in service requirements of AR 624–100, para. 2–3f and 10 U.S.C. § 619(a)(2). If it does not meet the requirement of AR 624–100, para. 2–3f, her first failure of selection was invalid. If it does not meet the actual service in grade requirement of 10 U.S.C. § 619(a)(2), both passovers were invalid.[6] In either event, whether based on two illegal passovers or only one, her discharge would be invalid.

 Defendant claims that plaintiff's backdated "date of rank" establishes the beginning of her "constructive service" at the grade of captain and that such "constructive service" meets the prerequisites of 10 U.S.C. § 619(a)(2) and of AR 624–100, par. 2–3f. Alternatively, it argues that, even if these prerequisites were not met, these deficiencies were "harmless" because

---

5. Ms. Finkelstein also contends:
 (1) That the selection boards' actions should be voided on equitable grounds, because they were convened before she could develop an adequate record for promotion review and because this essentially voided the supposed "relief" granted by the Secretary pursuant to her first ABCMR appeal;
 (2) That her supervisors prevented her from providing various material to the May, 1983 selection board, as permitted by AR 624–100, para. 2–5d(2), including official records she believed to be missing from her file (it is not clear from the record whether the missing official material was included); and
 (3) That the board must have improperly reviewed her restricted microfiche record.
 The court does not reach or decide these issues, basing its judgment on other grounds. The court also has no jurisdiction to award relief solely on equitable grounds. *United States v. King,* 395 U.S. 1, 3, 89 S.Ct. 1501, 1502,

23 L.Ed.2d 52 (1969). The Court of Claims' decision in *Yee v. United States,* 512 F.2d 1383, 1386 (Ct.Cl.1975), relied on by plaintiff for the proposition that the court may set aside corrective action by the Board that does not eliminate the original injustice, was not based solely on the fact that Yee's reinstatement gave him only four months of active duty service before promotion consideration but also, unlike here, on the lack of any explanation of the gap in his record caused by removed OERS.

6. The fact that plaintiff may not specifically have relied on 10 U.S.C. § 619 or AR 624–100 in her petition to the ABCMR does not preclude the court's consideration of these provisions, since the ABCMR, by specifically incorporating the PERSCOM opinion, based its decision on that opinion's application of those authorities (or purported to do so).

plaintiff would not have been promoted in any event.

These legal issues of statutory and regulatory interpretation are amenable to resolution by summary judgment. *See Hill v. United States*, 945 F.2d 1529, 1530 (Fed. Cir.1991) (summary judgment proper when case "turns on a legal issue—the proper interpretation of ... statutes and regulations."), *rev'd on other grounds*, —— U.S. ——, 113 S.Ct. 941, 122 L.Ed.2d 330 (1993).

### *The Statute and Regulations*

The statutory time-in-service prerequisite for consideration by a promotion selection board is found at 10 U.S.C. § 619(a)(2), which provides (in pertinent part):

> an officer who is on the active-duty list of the Army ... and holds a permanent appointment in a grade above first lieutenant ... may not be considered for selection for promotion to the next higher permanent grade until he has completed the following *period of service in the grade* in which he holds a permanent appointment: (A) Three years in the case of an officer of the Army ... holding a permanent appointment in the grade of captain, major, or lieutenant colonel....

10 U.S.C. § 619(a)(2) (emphasis added).

10 U.S.C. § 619(a)(3) provides (in pertinent part):

> When the needs of the service require, the Secretary ... may prescribe a longer period of service in grade for eligibility for promotion, in the case of officers to whom [§ 619(a)(1)] applies, or for eligibility for consideration for promotion, in the case of officers to whom [§ 619(a)(2)] applies.

The regulatory prerequisite is found at AR 624–100, para. 2–3f (1984)[7] ("Exclusions from eligibility ...") which states (emphasis added):

> (1) In general, to be eligible for promotion consideration an officer must complete *one year continuous active duty (since the most recent placement on the active duty list)* prior to the board's convene date. However, the following are exempt from the one year requirement:
>
> (a) An army competitive category officer in the grade of 1LT who received an interservice transfer while on active duty and who transferred without a break in active duty service.
>
> (b) An officer entering active duty as 1LT.[8]
>
> (c) An officer entering active duty as CPT in the Medical and Dental Corps.
>
> (d) An officer who receives an interservice transfer to Army Medical Department promotion competitive categories from the medical department of another Armed Force of the United States.

(2) *Requests for exception* to this one year continuous active duty requirement must be forwarded through the first general officer in the chain of command to DAPC–MSP–O. The request must substantiate that the officer's break in service *does not warrant the protection provided by the one year active duty requirement.* Requests for exception will be processed on a case-by-case basis.

### Discussion
### *Express Award of Constructive Service*

The government contends that plaintiff constructively commenced service at the grade of captain on August 19, 1977, the

---

**7.** AR 624–100, para. 2–3f may have been promulgated under authority of 10 U.S.C. § 619(c)(2)(C), which provides that the Secretary "may, by regulation, prescribe a period of time, not to exceed one year, from the time an officer is placed on the active-duty list during which the officer shall be ineligible for consideration for promotion." Alternatively, it may have been intended to implement 10 U.S.C. § 619(a)(3), which would strengthen the argument that the one year service requirement was not intended to be met merely by compliance

with the statutory three year minimum. AR 624–100 merely states, generally, that it was promulgated in implementation of 10 U.S.C. §§ 601–640 (1988).

**8.** The regulation was amended effective September 1, 1989 to read, at (b), after "An officer," and before "entering active duty as 1LT" "assigned to or appointed in the Judge Advocate Generals' Corps or Chaplin's Corps."

date of rank as captain specified in her corrected records, and that "such constructive service" fulfills *both* of the eligibility requirements at issue here. Defendant's argument essentially boils down to the tautology that plaintiff *was* awarded constructive service credit for these purposes because she "must" be "deemed" to have been awarded such credit. However, the facts do not support this contention.

The first ABCMR decision, the secretarial order implementing it, and the orders following the secretarial order do not mention "constructive service" or any other type of service credit. Nor has the government proffered any evidence that it ever specifically informed plaintiff that her new "date of rank" (DOR) would credit her with additional time in grade for purposes of accelerating the schedule for promotion consideration to the grade of major, or that the DOR credited her with active duty or active service credit or "constructive service" credit, for any purpose other than to calculate her back pay damages and pecuniary benefits pursuant to the ABCMR's authority under 10 U.S.C. § 1552(a)(1) (1988).

The ABCMR letter notifying her of its favorable recommendation, in fact, informs her only of the consequence for her "pay account," stating that she would be advised

of "settlement of [that] account without any further inquiry on [her] part."

The May, 1982 order (implementing the secretarial order following the first ABCMR recommendation) that plaintiff's records be corrected specifically directed only two corrections—in her grade (to captain), and in her DOR in that grade (to August 17, 1977). It did not mention constructive service or other credits for imputed service. (Nor did the orders of June 9 and September 29, 1982 provide that she would receive constructive service or other service credit for the August 17, 1977 through October 15, 1982 period, the latter representing the date she was ordered back to active duty).[9]

These orders also did not characterize the 1977–1981 period as a period of "active service" or "active duty." Rather, both orders expressly "ordered [her] *to* active duty," beginning on dates in September or October, *1982*, and not on August 17, 1977. They also date her "period ... [of] active duty [voluntary indefinite] commitment" from 1982, not 1977.[10]

 In short, nothing in plaintiff's official record states that she was, or was deemed to be, "in active service," on "active duty," or on the active duty list during the period between August 17, 1977 and May 1982.[11] Thus, 10 U.S.C. § 619(a)(2)

---

9. Plaintiff's initial appointment order, in July, 1973, did contain the following standard form language relative to constructive service credit: "If you have been *credited* with 'years of service in an active status' the number of years, months and days is shown ... (*applies only to Medical Personnel and the Judge Advocate General's Corps*). This service is not valid for basic pay entry date ... and it is not the result of prior military service." No such years, months or days were shown on her appointment or reappointment orders, however. Also, such credit expressly was available only to members of the referenced categories, among which plaintiff was not included and expressly *not* awarded for "prior military *service.*"

10. The fact that the ABCMR's *recommendation* that her records be corrected was phrased in terms of "active duty" and "service," *e.g.,* so as to "place her in an active duty status without a break in service and loss of pay and allowance" is not dispositive, since the Secretary was not bound to follow that recommendation (and, indeed, the recommendation may be read as an effort merely to change her DOR for pay and

allowance purposes only, as permitted by 10 U.S.C. § 1552, and not for purposes of § 619(a)(2) and AR 624–100, para. 2–3f, to which it does not refer). Also, the ABCMR's precise recommendation was that she be placed, not on active duty, but on "active duty *status*," which connotes an entirely different category of service. In fact, "active *status*" is a term of art, defined in 10 U.S.C. § 101(25) (1988) ("Definitions"), not as active duty or active service, *see* 10 U.S.C. § 101(22), (24), but as "the status of a reserve commissioned officer ... who is not in the inactive ... National Guard, on an inactive status list, or in the Retired Reserves."

11. 10 U.S.C. § 101 ("Definitions."), at subsection (d) ("Duty status"), defines "active duty" (in pertinent part) as: "full time duty in the active military service ... includ[ing] ... full-time ... [and] annual training duty, and. attendance ... at ... a service school. [It] ... does not include full-time National Guard Duty." 10 U.S.C. § 101(d)(1). "Active Service" is defined as "service on active duty." 10 U.S.C. § 101(d)(3) (in pertinent part). Each of these categories clearly

and AR 624–100, para. 2–3f, both of which refer to "active duty" or "service," and neither of which refers to DOR (unlike other portions of the same statutory section and regulatory chapter), do not appear to support defendant's argument that a DOR earlier than three years, or one year, before the convening of a selection board,[12] respectively, meets the requirements of either time in service requirement.

### ABCMR/Secretarial Authority To Award Constructive Service under 10 U.S.C. § 1552

10 U.S.C. § 1552 provides (in pertinent part, emphasis added): ("Correction of military records: Claims incident thereto"), that the Secretary of a military department "may correct any military record ... when [he] considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a). 10 U.S.C. § 1552 also authorizes a military department to pay, from applicable current appropriations, a claim for the loss of "pay, allowances, compensation, emoluments, or other *pecuniary benefits*, or ... for the repayment of a fine or forfeiture, if, as a result of correcting a record under this section, the amount is found to be due the claimant *on account of his ... service....*" 10 U.S.C. § 1552(c). 10 U.S.C. § 1552(d) provides (in pertinent part, emphasis added): "Without regard to qualifications for reenlistment, or appointment or reappointment, the Secretary ... may reenlist a person in, or appoint or reappoint him to, the grade to which payments under this section relate." Also, the Secretary's statutory authority to "appoint or reappoint" pursuant to 10 U.S.C. § 1552(d) is qualified by the statutory requirements of chain of command approval, *see* 10 U.S.C. § 624 (1988), as well as by the constitutional presentment requirement.

These authorized actions do not expressly include the award of constructive service meeting promotion time requirements.

Nor can the ABCMR's authority to correct record errors pursuant to 10 U.S.C. § 1552 be read as implicitly supplanting other statutory requirements, such as those regarding promotions in 10 U.S.C. § 619. Such a reading would revoke those statutes by implication, which clearly is impermissible under established principles of statutory construction. *See United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 519–20, 99 L.Ed. 615 (1955) ("It is our duty, 'to give effect, if possible, to every clause and word of a statute,' ... rather than to emasculate an entire section.") (Citations omitted); *see also Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518, 523, 106 S.Ct. 768, 771, 88 L.Ed.2d 877 (1986) ("' "repeals by implication are not favored" ' ") (citations omitted).

Defendant relies heavily on *Dilley,* 627 F.2d at 407, for the proposition that constructive service may be used for all purposes.

■ Thus, 10 U.S.C. § 1552 does not by its own terms, or implicitly, authorize the award of constructive service, since years of constructive service for *promotion* purposes, even if deemed "benefits" are not merely "pecuniary benefits" under § 1552(c). Nor, by definition, are they payable "on account of ... service under § 1552(c)." *See Dehne v. United States,* 970 F.2d 890, 893–94 (Fed.Cir.1992).

### Constructive Service Under the Statute and Regulations

The term "constructive service" is not used in the statutory or regulatory provisions in question, 10 U.S.C. § 619(a) or in AR 624–100, para. 2–3f. When used elsewhere in AR 624–100, chapter 2, the term refers to the constructive service credits expressly authorized for certain experience and advanced training by 10 U.S.C. § 533 (1988), that is, credits awarded upon original appointments in the medical or dental

---

requires actual, not constructive, "service" or "duty."

**12.** AR 624–100, para. 2–3c, refers to "time in grade" requirements. However, this provision implements 10 U.S.C. § 619(a)(2) and, to the

extent it conflicts with the statute itself, the statute prevails. *Melamine Chemicals, Inc. v. United States,* 732 F.2d 924, 930 (Fed.Cir.1984) ("That statutes prevail over conflicting regulations is a truism.").

corps, or Judge Advocate General (JAG) Corps, or to graduates of the military academies. *See* AR 624–100, para. 2–9e.

Defendant's reliance on the reference in the definition of DOR (in the glossary to AR 624–100), which provides that the DOR may be adjusted to reflect periods of "constructive service," is misplaced, because 10 U.S.C. § 619(a)(2) and AR 624–100, para. 2–3f do not refer to DORs and 10 U.S.C. § 1552 does not mention adjustment to the DOR.[13]

Indeed, defendant's establishment of a new DOR in the grade of captain for Ms. Finkelstein appears to violate the procedures for determining DORs that are set out in defendant's own regulations. *Cf. Murphy v. United States,* 993 F.2d 871, 873 (Fed.Cir.1993) (military is "bound to follow its own procedural regulations if it chooses to implement some.").

AR 624–100, ch. 6, para. 6–4 sets out the "Procedure for determining DOR of Regular Army (RA) commissioned officers" as follows: "The DOR of an RA commissioned officer who is promoted to a higher grade will be the date designated in the order which announces the promotion. Except as otherwise provided by law, this date will be the date the officer is appointed in the higher grade (10 U.S.C. § 419(d)(2))." *See* AR 624–100, para. 6–4c. "The DOR of RA commissioned officers not on the ADL (10 U.S.C. § 641) will not be adjusted if they are placed on the ADL without a new original appointment." *See id.* at para. 6–4d.

Thus, plaintiff's DOR should have been the date of her appointment as a captain, *i.e.,* May 4, 1982, when the correction order was issued purportedly establishing her status as captain, unless "otherwise provided by law." Defendant, however, cites no provision of law allowing retroactive promotion pursuant to 10 U.S.C. § 1552. *See* discussion *supra* at pp. 619–20 (*see also*

discussion *infra* pp. 625–26, questioning the authority of a STAB or ABCMR to order a promotion).

■ Based on the foregoing, the court concludes that the references in § 619(a)(1), and AR 624–100, para. 2–3f, to completion of "service" and to "continuous active duty," respectively, refer to actual service. Defendant has cited no statute or regulation authorizing it to substitute constructive service for these requirements.

Defendant's argument that the court must defer to the ABCMR's or the Army's construction of its own regulations is not applicable when it has cited *no* regulation, nor any interpretation of any regulation (published or not), showing the Army's intention that reinstatement and back pay awards pursuant to 10 U.S.C. § 1552 will result in constructive service credit for purposes of the time limitations in 10 U.S.C. § 619 and AR 624–100, para. 2–3f. The ABCMR decision and the PERSCOM opinion simply do not address this question. Further, even assuming, arguendo, that such an interpretation existed, it is unlikely to be entitled to deference because it would be plainly inconsistent with the provisions of 10 U.S.C. §§ 619 and 533, and AR 624–100, discussed above. *See United States v. Larionoff,* 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977) (citations omitted).

When the Congress has intended to credit "constructive service" for purposes of meeting other service requirements, it has known how to do it, and has done so expressly. *See, e.g.,* 10 U.S.C. § 533 (1988) ("Service credit upon original appointment as a commissioned officer") (allowing person receiving an original appointment to be credited "for the purpose of determining grade and rank" with "constructive service" for advanced education, training, or experience). And in implementing his statutory authority to permit constructive ser-

---

**13.** Defendant also is incorrect in saying that plaintiff is merely challenging the nature and extent of the first ABCMR's relief and is foreclosed from doing so at this time. Plaintiff could not have challenged such relief at the time, because she had no way of knowing that it

would adversely affect her promotion opportunities by depriving her of the minimum service periods of 10 U.S.C. § 619(a)(2) and AR 624–100, para. 2–3f. *See also* discussion *infra* pp. 623–24.

vice to be counted for promotion purposes, the Secretary has promulgated regulations setting out, in considerable detail, the procedures for doing so. *See, e.g.,* AR 624–100, para. 2–3f(1)(b) through (d), para. 2–16 through 2–20, Tables 3–1, 3–2, 3–3.[14]

The government has cited no authority, other than the PERSCOM advisory opinion to the ABCMR, and a decision by the District of Columbia Court of Appeals, *Dilley v. Alexander,* 627 F.2d 407 (D.C.Cir.1980), to support its constructive service arguments. Neither of these opinions is precedent binding this court.

The PERSCOM opinion is of particularly scant persuasiveness, because it never even acknowledges that plaintiff's service since 1977 was not "real," "actual," or continuous, or that it was predicated solely on a DOR date established by a correction of record.

The PERSCOM opinion also does not purport to represent the Secretary's or the agency's longstanding interpretation of the statute, or to be binding on the Secretary. *Cf. Murphy,* 993 F.2d at 871, (*ex post facto* MILPERCEN ruling not entitled to deference). Thus, it would be entitled to no deference even if it did not conflict with the statute or the published regulations. *Fairchild v. Lehman,* 814 F.2d 1555, 1557 (Fed. Cir.1987) (interpretation of regulations not entitled to judicial deference if inconsistent with statute and regulation).[15]

The lack of any provision in AR 624–100 ("Promotions of Officer on Active Duty") allowing or referring to constructive service under circumstances such as these is significant. While remedies for illegal discharges in the form of reinstatements and the back pay to the date of discharge are not uncommon occurrences—and are recommended by the ABCMR and ordered by the Secretary or this court with some fre-

quency—it is notable that the extensive and highly detailed promotion regulations published in AR 624–100 omit any reference to a constructive service credit resulting from such back pay and reinstatement awards, whereas they deal extensively with the proper treatment of other types of constructive service credit, (*e.g.,* the credit upon original appointment that is awarded to Medical and Dental Corps officers and others pursuant to 10 U.S.C. § 533) and the relationship between such constructive service and the requirements of 10 U.S.C. § 619(a) and other promotion requirements. *See, e.g.,* AR 624–100 ch. 2, section III ("Promotion of Medical Corps and Dental Corps Officers"), para. 2–19, tables 3–1, 3–2, 3–3, 2–20, ch. 3, para. 3–3, ch. 6, para. 6–4b(3)(c), 6–7, 6–8, 6–9 (JAG Corps).

*The case law regarding constructive service*

In the case law, "constructive service" is recognized as a "legal fiction", *see Dilley,* 627 F.2d at 408, and is distinguished from service "actually performed," *see Dehne,* 970 F.2d at 890 (distinguishing "constructive service" added to Air National Guard member's records from "service actually performed" and holding that neither 37 U.S.C. § 206(a) nor 10 U.S.C. § 1552(c) mandated pay for "service never actually performed" by Air National Guard member, and that five years of "constructive service" added to his record by a correction of record at the recommendation of the Board did not constitute actually performed military service for purposes of either statute, when plaintiff could "point to no statute or regulation that mandates pay for service never actually performed by a member of the Air National Guard.").

While the cases have allowed "constructive credit" for purposes of calculating entitlement to back pay and other money

---

**14.** This analogy is apt because the PHS is a "uniformed service," *see* 37 U.S.C. § 101(3) (1988), 'whose employees' compensation and benefits are governed by the same basic laws as for members of the armed forces. *See Hahn v. United States,* 757 F.2d 581, 583 (3d Cir.1985).

**15.** The government, although requested to provide any policy guidance or other evidence of

the Army's practice and policy interpreting these requirements, was unable to provide a single example of another officer who was retroactively promoted and who was deemed by the Army to meet the requirements of 10 U.S.C. § 619 or AR 624–100, para. 2–3f based on such constructive service.

benefits, under 10 U.S.C. § 1552, it has not been so used for the purpose of creating entitlement to other benefits. *E.g., Goble v. Marsh,* 684 F.2d 12, 16 (D.C.Cir.1982) (discussing "constructive service credit to be eligible for retirement ... benefits").

Indeed, the Court of Claims has declined to extend even a *statutorily* authorized period of constructive credit to any purpose not authorized by the statute creating the entitlement toward which the credit is sought to be applied. *See Bailey v. United States,* 158 Ct.Cl. 387, 1962 WL 9255 (1962) (holding that a serviceman could not, upon recall to active duty, use the three month constructive service credit awarded for discharges within three months of the end of an enlistment period in calculating his rate of pay; the constructive credit thus was held to be available only for determining his eligibility for retirement, and did not qualify as years of "active service creditable to him" for purposes of the pay statute).

The *Bailey* court distinguished *White v. United States,* 97 F.Supp. 698 (Ct.Cl.1951) and *Johnson v. United States,* 289 F.2d 829, 153 Ct.Cl. 593 (1961), because, in these cases, "[i]n the previous Acts, Congress specifically said constructive service was to be taken into account 'for all purposes.'"[16] *Bailey,* 158 Ct.Cl. at 392.

The *Bailey* court noted that the statute in question "sa[id] noting about constructive service; it speaks only of *service* on the active list nor on active duty. *Id.* When an enlisted man is discharged, he is neither on the active list nor an active duty." *Id.* (Emphasis added.) The *Bailey* court also distinguished between constructive service credit specified by Congress for other inactive periods, such a service on the retired list, or in the Reserve, and constructive service where there was no actual "service," *i.e.,* post-discharge. *Id.*

The facts in this case provide an even weaker basis for allowing constructive credit than those in *Bailey.* Like the pay statute in *Bailey,* the source of the benefit here, 10 U.S.C. § 619, does not specify that

constructive service may be taken into account. Unlike *Bailey,* however, where there was express statutory authority for up to three months credit for each early discharge, there is no statutory basis here for *any* award of constructive credit. Rather, § 1552, the source of the Secretary's authority to correct records and award relief incident thereto, does not authorize, explicitly or otherwise, *any* allowance of constructive service credit, but only "pecuniary benefits." *See* 10 U.S.C. § 1552(c).

Defendant cites, and this court has found, no judicial decision holding that reinstatement pursuant to § 1552 may give rise to "constructive credit" for any purpose other than the award of back pay or of "other pecuniary benefits." Rather, the cases allow constructive credit for other than actual service only when a statute specifically authorizes it. *See Palmer v. United States,* 121 F.Supp. 643, 129 Ct.Cl. 322 (1954) (holding that 28 U.S.C. § 691(d), which requires a serviceman to "render [ ] 20 years of service" as a condition of entitlement to early retirement from a hazardous duty post allows actual service rendered prior to a *previous* promotion to be counted toward minimum time in grade promotion requirements because § 691(d) "explicitly states that service credit can be used to compute the required time in grade."); *cf. Walters v. United States,* 181 Ct.Cl. 790, 1967 WL 8894 (1967) (allowing actual service rendered prior to *previous* promotion to be carried forward and counted toward minimum time in grade requirements for subsequent promotion when *statute* "explicitly states that service credit can be used to compute the required time in rank.").

*The One Year Requirement of AR 624–100, Para 2–3f*

Even if constructive service were deemed sufficient to fulfill the three year statutory eligibility requirement, it would not necessarily follow that such constructive service

---

**16.** Section 511(b) of the Career Compensation

Act of 1949, Pub.L. No. 81–351, 63 Stat. 802, 829.

also would fulfill the AR 624–100,[17] para. 2–3f(1) prerequisite of one year "of continuous active duty since the [officer's] most recent placement on the active duty list." Rather, such a reading would impermissibly give no independent meaning to the term "continuous active duty" and would make the one year AR 624–100 requirement superfluous (since it would always be fulfilled by virtue of service for the three year minimum required by 10 U.S.C. § 619(a)(1)).

Defendant also appears to read the "continuousness" requirement out of the regulation, since Ms. Finkelstein's active service before August 19, 1977 was not in fact "continuous" with her service after October 15, 1982. See *supra* pp. 613–15.

A construction of statutes or regulations that renders portions superfluous is not entitled to judicial deference. *Menasche,* 348 U.S. at 538–39, 75 S.Ct. at 519–20.

The fact that "continuousness," and the "date of *most recent* placement on the active duty list," are relevant in determining whether the regulatory one year service prerequisite is met, but are *not* factors set out in the statutory three year service prerequisite, also gives the regulation a meaning independent of the statute.

Defendant's argument that Ms. Finkelstein had completed one year of continuous service after her "most recent placement on the active duty list," and before her consideration by the first selection board in May 1983, falters by the evidence in its own 1982 orders to Ms. Finkelstein that she return to "active duty" on *October 15, 1982,* less than seven months before the board met. Also, if, as defendant argues, the "date of rank" is identical to the "date of the most recent placement on the active duty list," it is incomprehensible why the

regulation did not say "DOR," the shorter, more clearly understood, and more commonly used, term. *Cf.* Glossary to AR 624–100, defining "DOR," but not "date of the most recent placement on the active duty list."

Also, it seems clear from 10 U.S.C. § 620 ("Active-duty lists") that one may be *on* the active duty list, and yet not have a *permanent DOR,* for promotion purposes, as of the date of one's placement on that list. *See* 10 U.S.C. § 620(c) ("An officer whose position on the active duty list results from service under a temporary appointment or in a grade held by reason of assignment to a position has, when that appointment or assignment ends, the grade and position that he would have held if he had not received that appointment or assignment.").

Defendant's argument, that the one year continuous active service requirement of AR 624–100 is met whenever a year of "service" meeting the requirement of 10 U.S.C. § 619(a) is completed, also ignores the different *purposes* of the two requirements. The three year requirement appears to be designed to protect the *Army's* need for flexibility in promotion training; thus, under § 619(a)(3) the Secretary "may prescribe a *longer* period of service in grade" "when the needs of the service require, but not a shorter period."

The one year requirement, on the other hand, clearly is intended primarily for the benefit of the individual officer, as may be surmised from the requirements that a request for an exception from the one year continuous service requirement "must substantiate that the officer's break in service does not warrant the *protection* provided by the one year active duty requirement" and be processed "on a case-by-case basis." AR 624–100 para. 2–3f(2) (emphasis added).[18]

---

17. Defendant relies on *Yee,* 512 F.2d at 1383, for the proposition that consideration by a selection board convened less than one year after return to active duty is not grounds for setting aside passover. *Yee,* however, was decided five years before AR 624–100 was promulgated and, thus, did not consider the issue presently before this court.

18. Of course, a recent service requirement also could be viewed as protecting the *Army, e.g.,* from decisions to promote based on outdated evaluations that do not reflect the candidate's current level of abilities and performance.

The exemptions set out in the regulation illustrate the protective purpose of the one year continuous active duty service requirement, because they apply only to service members who clearly would not be prejudiced by the lack of current evaluation data. The exemptions *also* implicitly recognize that "constructive service" would *not* automatically fulfill the one year active duty requirement, by expressly including the categories of officers statutorily entitled to constructive service credits (due to their entry into active duty as first lieutenants or as captains in the Medical or Dental Corps, pursuant to 10 U.S.C. § 533(b)(1) (1988)). AR 624–100, para 2–3(1)(c).

Because plaintiff—even if she were within the "zone of consideration" established by her date of rank for purposes of 10 U.S.C. § 619(a)(2)(A)—does not fit within any enumerated category of exemptions in AR 624–100, para. 2–3f(2)(a)–(d), and no request for exception was ever filed on her behalf under para. 2–3(f)(2), the court concludes that the selection board had no authority to consider her for promotion before she had completed one year of actual, continuous active duty service since her most recent placement on the active duty list on October 15, 1982.

### Waiver

■ Defendant's arguments that plaintiff waived the right to the protections of AR 624–100 or of 10 U.S.C. § 619(a)(2), or should be estopped from invoking them because she failed to request that the first ABCMR *not* award her constructive credit or because she did not request the promotion boards or the second ABCMR to delay her consideration for promotion are unavailing. These protections are legal prerequisites for promotion board action, and thus may not be waived by either the board or the ABCMR. Thus, a request for such relief would be futile.

■ Further, waiver and estoppel are equitable defenses, which may not be invoked against a party who was ignorant of the effect of her action or inactions on one who was not. *See, e.g., Diamond Scientific Co. v. Ambico, Inc.,* 848 F.2d 1220, 1225 n. 2 (Fed.Cir.1988) (estoppel requires ignorance on part of person invoking doctrine). There is no evidence that plaintiff knew, should have known, or *could* have known, that the change to her DOR would drastically accelerate her schedule for promotion consideration, when she had no notice of this, actual (from defendant or others) or constructive (*e.g.,* in Army regulations or policy guidance or because this was common practice.) Also, plaintiff *did* request, in her petition to the second ABCMR, in the alternative, either the award of credit for education and experience that she "was not exposed to due to no fault of [her] own," or "selective[ ] ret[ention] to provide an opportunity to establish a track record."

### Conclusion

If the Secretary had no authority to award constructive service credit for purposes of waiving the requirements of 10 U.S.C. § 619(a)(2) or AR 624–100, para. 2–3f, either under 10 U.S.C. 1552 or any other statute or regulation cited or known to this court, the selection boards had no authority to convene and decide Ms. Finkelstein's eligibility for promotion, or to pass her over for promotion, before the required time in duty periods had elapsed.

The ABCMR was established to advise the Secretary in the exercise of his statutory discretion to correct military records, "when he considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a). The ABCMR's function is to consider all applications to determine the existence of an error or injustice. 32 C.F.R. § 581.3(b)(2) (1991). The Board may deny an application "if it determines that insufficient relevant evidence has been presented to demonstrate the existence of probable material error or injustice." 32 C.F.R. § 581.3(c)(5)(ii). If denied without a hearing, as here, the Board must make a written statement including the reasons for not granting relief, "including applicant's claims of constitutional, statutory and/or regulatory violation rejected." 32 C.F.R. § 581.3(c)(5)(v).

Nonetheless, neither the ABCMR nor the defendant have provided any reasons why correction of plaintiff's record to establish a DOR as captain should or could legally be deemed to have met either the three year requirement of 10 U.S.C. § 619(a)(2) or the one year requirement of AR 624–100, para. 2–3f.

Like failure to provide the procedural protection specifically required by statute or regulation identified by the court in *Doyle*, 599 F.2d at 984, (the lack of any reserve officer on a selection board), the error of prematurely subjecting an officer to selection board consideration was not "harmless," because it resulted "in the dilution of the afforded protection" of 10 U.S.C. § 619(a)(2) and AR 624–100 para. 2–3(f), a protection that appears to have been "the result of a considered decision "by the Congress as well as the Secretary," as to the fairness of [this] particular process." Also as in *Doyle*, 599 F.2d at 984, this court "has no way of evaluating the effect of the error" on plaintiff's record or the likelihood of her selection with the benefit of a longer period of actual service.

The ABCMR's refusal to correct Ms. Finkelstein's record to remove the unauthorized passovers and to reinstate her in the Army was based on an erroneous interpretation of the applicable law.

Therefore, the court orders that plaintiff's cross-motion for partial summary judgement seeking reinstatement, back pay, and correction of records be granted, and the case be remanded to the ABCMR.

Upon remand, the ABCMR shall determine the position to which Ms. Finkelstein should be reinstated, when she should be reconsidered for promotion by an SSB or a selection board, and the *quantum* of back pay and other pecuniary benefits to be awarded pursuant to 10 U.S.C. § 1552. In determining the position to which she should be reinstated (lieutenant or captain), and thus the amount of back pay the Army shall consider whether the ABCMR's or (see *supra* note 1) the STAB's determination to award plaintiff a "retroactive" promotion to the grade of captain was authorized by law.

*STAB Promotion Authority*

█ If, as appears, the STAB is not a statutorily created SSB and lacks any other authority to make promotion selection decisions,[19] a promotion by that entity would appear to be null and void. *Cf. Dodson v. United States*, 988 F.2d 1199, 1205 (Fed. Cir.1993) (neither court nor ABCMR sits as a super-selection board); *Doyle*, 599 F.2d at 1001 (deficiency in a selection board may not be remedied by a standby or relook board that does not undertake the exhaustive reevaluation that a selection board does) (en banc).

10 U.S.C. § 616(d) (1988) expressly provides (emphasis added): "Except as otherwise provided by law, an officer on the active-duty list *may not be promoted to a higher grade ... unless he is considered and recommended* for promotion to that grade *by a selection board* convened under this chapter."

The only bodies statutorily authorized to select or recommend an officer for promotion, and thus "provided by law," are the promotion selection boards themselves, pursuant to 10 U.S.C. §§ 611–618 (1988), or a special selection board (SSB) sitting in the place of a selection board that failed to consider or previously nonselected the officer for promotion, as authorized by 10 U.S.C. § 628 (1988). The court is aware of, and defendant has cited, no provision of law permitting a STAB (or the ABCMR) to consider and recommend an officer for promotion.[20]

---

**19.** *The Army's own procedural guide for promotions, Deputy Chief of Staff for Personnel (DCSPER), Officer Promotion, Standing Operating Procedure (SOP), limits the STAB's powers to those advisory in nature. The Army's procedural guide sets the authority of the STAB to "make[ ] recommendations to the Secretary ... to assist him in determining whether an officer* has been prejudiced by an error in connection with an earlier promotion board. The STAB advises; the Secretary acts." See* DCSPER, Ch. 7, ¶ 1 (Sept. 5, 1978) (emphasis added).

**20.** *But see Chappell*, 462 U.S. at 303, 103 S.Ct. at 2367 (stating, in case involving discrimination action against superior officer, in *dictum* and

Retroactive promotion by a STAB, or even by the Secretary,[21] would bypass the mandatory statutory procedures for promotion approval,[22] including a properly constituted board, comparison with the other officers before the original board, *see* 10 U.S.C. § 612; application of promotion standards and procedures established by statute, 10 U.S.C. §§ 616, 618(e); review by the Joint Chiefs of Staff, approval by the Secretary of Defense and "approval, modification, or disapproval" by the President, and, in the case of an officer being considered for promotion to the grade of major or above, the advice and consent of the Senate, *see* 10 U.S.C. § 624(c).[23]

If a selection board fails to consider an applicant due to administrative error, the cognizant Secretary must refer the promotion selection decision to an SSB: "In the case of an officer ... *not considered* for selection for promotion by a selection board because of administrative error, the Secretary ... *shall* convene a special selection board ... to determine whether such officer should be recommended for promotion." 10 U.S.C. 628(a)(1) (1988) (emphasis added).[24]

Section 628(b)(1) states that in the case of an eligible officer considered but not selected due to other errors, including lack of material information or material error of

---

without reference to authority other than § 1552(c)—which says no such thing—that "the Board is empowered to order retroactive back pay *and retroactive promotion.*") (emphasis added).

**21.** There appears to be no constitutional objection to the Congress' imposing a statutory limitation, in the form of a selection board process, on the executive's constitutional appointment authority. *See* 41 U.S. Op. Atty. Gen. 291, 1956 WL 4915 (August 22, 1956) ("Promotion of Marine Officer") finding "no constitutional objection to [a congressionally required] examining board rendering no imperative judgments, but only aiding the appointing power with information" and noting that "a multitude of laws have been enacted which limit the President's power to make nominations, and which, through the restrictions imposed, may prevent the selection of the person deemed by him best fitted. Such restriction upon the power to nominate has been exercised by Congress continuously since the foundation of the Government. Every President has approved one or more of such acts. Every President has consistently observed them." (quoting Brandeis, J., dissenting in *Myers v. United States,* 272 U.S. 52, 265, 47 S.Ct. 21, 75, 71 L.Ed. 160 (1926)).

The same opinion specifically concluded that "there is no authority to rely on statute [conferring temporary promotion] to disregard the [statutory]"—restriction [he that appointments to grades above first lieutenant in the Marine Corps may be made 'only upon the recommendation of a board of officers convened for that purpose]."

**22.** The legislative history of the Officer Personnel Act of 1947, which established the current competitive "up or out" promotion system, also indicates that the Secretary alone was not intended to have such authority. In response to a question from Senator Byrd, General Eisenhower stated that a man of great quality serving as a captain could not be instantly "jumped" to colo-

nel: "We feel that there have to be certain brakes put on [promotion], because we do not want ever to have the Army in time of peace charged with favortism [sic]." *See* Hearing on H.R. 3830 before the Senate Armed Services Committee, 80th Cong., 1st Sess. 13 (1947) (statement of Dwight D. Eisenhower, General of the Army). The legislative history also indicates that "officers appointed [upon recommendation of a selection board], whether general officers or officers of lower grade, must have 'demonstrated by actual and extended duty in such arm, branch, or service or on similar duty that he is qualified for [a higher] assignment.'" *Id.* at 7 (letter from Senator Cordon referring to H.R. 3830 and quoting from H.R. 3830, Confidential Committee Print No. 1, July 15, 1947, pp. 290, 297.); *see generally Doyle,* 599 F.2d at 984 (describing how the 1947 Officer Personnel Act changed the prior seniority system by providing for the selective promotion of officers based on their qualifications, which "was accomplished through selection boards ... which chose from among all of the officers eligible for promotion because they had been in a *particular* rank for a *certain* time") (emphasis added).

**23.** The court assumes that the STAB did not in fact comply with all applicable requirements for promotions under 10 U.S.C. §§ 611–646 (1988) ("Promotion [etc.]") and the requirements thereunder and therefore expresses no opinion to whether such compliance would cause the infirmities noted here.

**24.** Even the SSB has no apparent power to order a retroactive corrective promotion to the rank of captain, because the statute only authorizes an SSB to *recommend* for promotion, not to appoint or promote; after its recommendation is made, the officer's name is presented to the President for approval and actual appointment/promotion. *See* 10 U.S.C. §§ 611, 624, 628.

fact, as in Ms. Finkelstein's case, the Secretary "may" convene an SSB to determine whether such officer should be recommended. However, the use of the term "may" does not (nor does any other provision of law) appear to authorize the Secretary to make the selection decision unilaterally, *i.e., without* benefit of an SSB's or selection board's recommendation. In short, while the statute gives the Secretary discretion as to whether to convene an SSB—and thus put the promotion process in gear—it does not appear to authorize him to accomplish the promotion without carrying out the steps mandated for the SSB process.

Further, even if an SSB recommends an officer for promotion, the promotion may not be finalized without following the procedures established by § 624(b), (c) and (d) ("Promotions: how made"). *See* 10 U.S.C. § 628(d)(1). The President also must approve the report of the SSB. *Id.*

Significantly, neither § 624 ("Promotions: how made"), nor any other provision of ch. 36 of title 10 of the United States Code ("Promotion, Separation, [etc.]") provides the Secretary of a service, or his appointees, such as a STAB or an ABCMR, with unilateral authority to approve a promotion, or with authority to bypass the procedures regulating SSBs and promotion boards. (Nor does any regulation.)

When the issue of the STAB's promotion authority was raised by the court, as an apparent "plain legal error committed by the military," *see Arens,* 969 F.2d at 1037, the defendant undertook to provide authority for the proposition that the Secretary, either on his own or by and through only an ABCMR or STAB, may order a promotion, retroactively or otherwise. The only authority provided by defendant, however, was the decision of this court in *Braddock v. United States,* 9 Cl.Ct. 463, 467–68 (1986), purportedly "approving" a STAB's functioning as a selection board. This decision, however, did not directly hold that a STAB itself may authorize a promotion (but only that it may advise a correction board regarding whether an error

was "harmless" for purposes of ordering a record correction under 10 U.S.C. § 1552). To the extent Braddock held that a STAB may substitute for a selection board, the decision is not binding on this court, which respectfully disagrees.

The court also notes that, notwithstanding the court's statutory authority, parallel to the ABCMR's, to order the correction of military records, *see* 28 U.S.C. § 1491(a)(2), there never has been any suggestion that such authority encompasses the ordering of retroactive promotions. On the contrary, the notion has been firmly rejected, as to both this court (and its predecessor) and the BCMRs. *E.g. Murphy,* 993 F.2d at 871, (" 'request for retroactive promotion falls squarely within the realm of nonjusticiable military personnel decisions' ") (citation omitted); *Dodson,* 988 F.2d at 1206 ("The ABCMR reviews selection decisions for error; it does not, contrary to the Army's repeated assertion, make selection decisions on a de novo basis;" "ABCMR may potentially remedy an error ... in a selection decision by ordering a new selection board involved to make the decision de novo.") (Citing *Doyle,* 599 F.2d at 998); *Voge,* 844 F.2d at 776.

The authority of the ABCMR or the Secretary pursuant to 10 U.S.C. § 1552 extends only to correcting record errors or injustices. "Correction" of a failure to select by a selection board by ordering a selection would not appear to be an appropriate remedy when the *selection board* committed no error, and the only *error* was committed in creating the *record* presented to the board (*e.g.* an incorrect OER). Further, lost pay may be awarded only if, *as a result of correcting the record,* the amount is found due "on account of ... service." *See* 10 U.S.C. § 1552(c), *See also Dehne,* 970 F.2d at 893–94. If an OER is corrected and the SSB still fails to select and no promotion is made, it would appear that no pay is "due."

Also, while the ABCMR may "re-enlist ... appoint or reappoint a service member," it may do so only "to the grade to which the payments ... relate." *See* § 1552(d). *See Dilley v. Alexander,* 603 F.2d 914, 923 n. 20 (D.C.Cir.1979) (holding

that ABCMR may not, even with approval of secretarially appointed, but nonstatutory "Relook Boards," sidestep the promotion procedures applicable to a statutory selection board: "Although [§ 1552] gives the corrections board discretion to remedy errors in military records ... it does not entitle the board to violate express statutory directives in doing so") (citations omitted).

The court leaves it to the ABCMR to determine, in the first instance, whether plaintiff's "promotion" to captain must be voided and plaintiff must be reinstated to active duty at the grade of first lieutenant. It seems clear that if this is ordered, however, she should expeditiously be provided consideration for promotion to the grade of captain by an SSB, based on her corrected record.

If the foregoing is ordered, it also would appear that the difference between back pay and allowance at the grades of captain and second lieutenant awarded with respect to the 1977 to 1982 period must be offset against plaintiff's back pay recovery for the period from 1982 to date.[25] *But see Doyle,* 599 F.2d at 1000 (concluding that "it is clear that [10 U.S.C. § 1552] only confers on the Secretary the power to correct records in favor of a serviceman and never against him").

The court recognizes that plaintiff did not argue for the outcome reached by the court, and that she may not consider it a sufficient remedy for the ABCMR's errors. However, this court does not have the power to award any relief not authorized by law, and feels bound to notice the apparent error regarding her promotion by the STAB and provide the Secretary an opportunity to correct it.

---

**25.** The court discerns no better basis for allowing service credits for retirement eligibility than for promotion consideration. The law governing retirement eligibility may permit such credits even if there is no source of authority for credits for purposes of early retirement. However, the ABCMR's authority under 10 U.S.C. § 1552(c) would appear to include recommending "pecuniary" payments to compensate for retirement pay lost as a result of the record error corrected by recommendation of the ABCMR. *Cf. Dehne,* 970 F.2d at 890 (distinguishing, under § 1552, the authority to make payments from the authority to mandate a rate of pay).